# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **SCOTT SCHMIDHAUSER, on behalf of**<br>**himself and all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 1:20-cv-11940-RWZ** |
| **v.** | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| | ) | **AND DEMAND FOR JURY TRIAL** |
| **TUFTS UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Plaintiff Scott Schmidhauser brings this action on behalf of himself and all others similarly situated against Defendant Tufts University, and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, and says:

## I.  NATURE OF THE CASE

1.     Tufts is one of the most prestigious private universities in the country, providing higher education in the arts, sciences, medicine, engineering, law and diplomacy, and management, among other disciplines. Plaintiff is a student at Tufts.

2.     On March 10, 2020, Tufts announced that it was canceling in-person classes due to the pandemic of the Coronavirus Disease 2019 ("COVID-19").

3.     Plaintiff does not dispute that Tufts's decision to cease in-person instruction was warranted. Plaintiff asks merely to be refunded the money he spent for services that were not provided.

4.     For the Spring 2020 semester, Tufts charged undergraduate students $28,617 in tuition alone.  For the 2020-2021 academic year, tuition, fees, room and board and other expenses were calculated at approximately $79,000.

5.      Prior to its March 2020 announcement that it would cease in-person instruction and effectively close the campus for the rest of the Spring 2020 semester, Tufts permitted online education for only some courses in only some schools. In fact, for its undergraduate students, Tufts prohibited students from taking more than 15 semester hour units online.[1]

6.      After its March 2020 announcement, Tufts canceled three days of classes (March 13, March 23, and March 24), and moved substantially all of the remaining classes online. Many classes were canceled for the rest of the semester, and not taught even online. In either case, students like Plaintiff were forced to forego the remaining semester of promised in-class instruction.

7.      Though Tufts could no longer provide the remaining classroom/direct faculty instruction after shuttering the university in early March, Tufts still demanded that students pay the full tuition price.

8.      While the effects of the COVID-19 crisis are shared by all individuals and institutions across the country, Tufts has failed to apportion the burden in an equitable manner or consistent with its obligations as an educational institution.

9.      Tufts is not entitled, by either contract or equitable principles, to pass the entire cost of its COVID-19 related closure to its students and their families. Plaintiff and the putative Class are entitled to a partial refund of the tuition, fees, and other related payments for in-person educational services, access to facilities, and/or related opportunities for which they paid that Tufts did not provide.

10.     Online classes cannot replicate the full academic opportunities and experiences of in-person instruction. Remote learning options cannot replace the comprehensive educational

---

[1]      Tufts Academic Credit Policies Before and After 2018, *available at* https://students.tufts.edu/sites/default/files/UpdatesAAAcreditpolicycomparisonGRID.pdf (last viewed Oct. 22, 2020).

experience promised by Tufts. Access to facilities, materials, laboratories, faculty, student collaboration, and the opportunity for on-campus living, school events, dialogue, feedback and critique are essential to the educational experience.

11.     Plaintiff and the putative Class contracted and paid for a robust education and full experience of academic life on Tufts's campus; remote online learning cannot provide the same value as in-person education.

12.     As a result, Tufts has financially damaged Plaintiff and the putative Class members. Plaintiff brings this suit because Plaintiff and the Class members did not receive the full value of the services for which they paid. They lost the benefit of their bargain and/or suffered out-of-pocket loss. They are entitled to recover compensatory damages, trebling where permitted, and attorneys' fees and costs.

13.     Plaintiff seeks, for himself and the putative Class members, a return of a prorated portion of the tuition, fees and other related costs, proportionate to the diminished value of online classes and the amount of time in the Spring 2020 and following semesters when Tufts ceased in-person classes, campus services and access to campus facilities, continuing through to such time as Tufts reinstates in-person classes.

## II.  JURISDICTION AND VENUE

14.     The Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

**15.**     The vast majority of Tufts students are not citizens of Massachusetts.[2]

**16.**     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Tufts is headquartered in this district.

**17.**     The Court has personal jurisdiction over Tufts because Tufts is headquartered in this district, because many of the acts and transactions giving rise to this action occurred in this district, and because Tufts conducts substantial business in this district.

### III.     PARTIES

**18.**     Plaintiff Scott Schmidhauser is a citizen and resident of the State of Massachusetts. Plaintiff was enrolled as a full-time student in Tufts's School of Dental Medicine since July 2018. Tufts charged Plaintiff $82,368 in annual tuition, plus additional fees.

**19.**     Defendant Tufts University is a private educational institution that offers programs at eleven constituent schools. Tufts had a total enrollment of approximately 10,919 full-time students at the start of the Fall 2019 semester.  As of June 2019, Tufts reportedly had an endowment of $1.98 billion.

---

[2]     Tufts 2019-2020 Fact Book at 25-27, *available at* https://provost.tufts.edu/institutionalresearch/files/Fact-Book-2019-20.pdf (last viewed Oct. 21, 2020).

## IV.   FACTUAL ALLEGATIONS

**A.    Contract Terms**

**20.**     Plaintiff and Class members entered into an express or implied contract with Tufts whereby, in exchange for the payment of tuition, fees and other related costs, Tufts would provide an agreed-upon number of classes through in-person instruction and access to physical resources and school facilities such as libraries, laboratories, and classrooms.[3]

**21.**     For each class taken, Tufts promised to provide the education specified in the course catalog and course syllabus, including the time and physical location of the in-person instruction. An example of such a promise is below:[4]

---

[3]        Tuition for the 2019-2020 academic year is available in Tufts 2019-2020 Fact Book, *available at* https://provost.tufts.edu/institutionalresearch/files/Fact-Book-2019-20.pdf (last viewed Oct. 21, 2020). Tuition for the 2020-2021 academic year is available on the website for the Tufts school.

[4]        Tufts Student Information System, *available at* https://sis.uit.tufts.edu. The example provided is available at https://sis.uit.tufts.edu/psp/paprd/EMPLOYEE/EMPL/h/?tab=TFP_CLASS_SEARCH&PORTA LPARAM_PTCNAV=TFP_CLS_SEARCH_BETA&EOPP.SCNode=EMPL&EOPP.SCPortal= EMPLOYEE&EOPP.SCName=TFP_GUEST&EOPP.SCLabel=Tufts%20Course%20Catalogs& EOPP.SCFName=TFP_COURSE_CATALOGS&EOPP.SCSecondary=true&EOPP.SCPTfname =TFP_COURSE_CATALOGS&FolderPath=PORTAL_ROOT_OBJECT.TFP_TUFTS.TFP_G UEST.TFP_COURSE_CATALOGS.TFP_CLS_SEARCH_BETA&IsFolder=false#search_result s/term/2202/career/ALL/subject/course/attr/keyword/instructor (last viewed Oct. 16, 2020) (left arrow added for emphasis).



**22.** Tufts prohibits changes in course formats unless they are approved by the school's curricular committee.

**23.** Part of the agreement between Plaintiff and Tufts are the countless representations about every aspect of a prospective student's life on campus that Tufts uses to attract potential students found in its course catalog, marketing materials, and throughout its website.

**24.** These representations relate not only to the on-campus, in-person academic program students contract with Tufts to provide, but also residential facilities, dining options, sports and recreational facilities, extracurricular activities, mentoring, campus diversity, and health and counseling services – all of which are designed to tout the benefits of Tufts's in-person, on-campus program.

25.    As just a few examples:

- "We oversee the fraternity and sorority program at Tufts . . . a vibrant part of Tufts campus."[5]

- "[i]n supporting the mission of Tufts University, the School of Arts, Sciences, and Engineering, and the Division of Student Affairs, the Office for Campus Life aims to foster a balance for all students between curricular and co-curricular opportunities.  In recognizing that an essential part of a student's growth takes place outside of the classroom, the Office for Campus Life strives to provide all Tufts students with exceptional programs, services, and opportunities to create well-rounded, independent thinkers who become effective leaders in college and beyond."[6]

- "For first year students, Hall Council is an exciting way to directly have an impact on your peers through social programming and events in your community. Hall Councils are student organizations within each first year residence hall that help create unity, excitement, and fun events for the community."[7]

- "With over 180 performances on campus every year, Tufts's vibrant music scene includes student-run a capella groups and bands, 18 performance ensembles, and classes open to all Tufts students regardless of prior experience."[8]

- "Welcome to Tufts Dining, where great food brings the campus together!"[9]

- "CAFE is an award-winning pre-orientation program that brings together incoming first-year students and upperclassmen leaders from diverse religious, non-religious, spiritual, and ethical identities. . . . CAFE participants have the opportunity to explore the Boston area on field trips to local religious and cultural gathering places, experience a variety of religious and philosophical practices at Tufts, strengthen leadership skills, and meet with local advocacy and social justice groups. We believe that the time of transition to a college campus can be a time for transformation, too."[10]

---

[5]    Fraternity and Sorority Life, *available at* https://students.tufts.edu/resources?keyword=fraternity (last viewed Dec. 31, 2020).
[6]    Tufts, Office for Campus Life, Office Mission, *available at* https://ocl.tufts.edu/about-us/mission/#:~:text=In%20recognizing%20that%20an%20essential,leaders%20in%20college%20and%20beyond (last viewed Dec. 31, 2020).
[7]    *Id.*
[8]    Tufts, Undergraduate Admissions, Music & the Arts, *available at* https://admissions.tufts.edu/discover-tufts/life-at-tufts/music-and-art/ (last viewed Dec. 31, 2020).
[9]    Tufts, Undergraduate Admissions, Dining on Campus, *available at* https://admissions.tufts.edu/visit/dining-on-campus/ (last viewed Dec. 31, 2020).
[10]    Tufts, Undergraduate Admissions, Spiritual Life at Tufts, *available at* https://admissions.tufts.edu/discover-tufts/life-at-tufts/spiritual-life-at-tufts/ (last viewed Dec. 31, 2020).

- Tufts athletic facilities are "open for use by the campus community at large," including a "70,000-square-foot indoor sports center . . . [o]ne of New England's best outdoor track and field facilities . . . [a] boathouse on the Malden River with indoor training and meeting rooms . . ."[11]

- The Collaborative Learning and Innovation Complex "provides sophisticated and specialized classrooms and labs along with versatile shared spaces" such as a rapid fabrication makerspace.[12]

- "Each year, 40-45 percent of Tufts undergraduates participate in full-year or semester-long foreign study programs around the world. . . . Some of the most profound educational experiences take place outside of the classroom. Tufts is proud to offer two unique global opportunities for incoming students to combine academics, a social impact internship, foreign language learning, and cultural immersion in six incredible locations around the world."[13]

26.    In its Mission, Tufts states that it is "a student-centered research university . . . committed to providing transformative experiences for students and faculty in an inclusive and collaborative environment . . ."[14]

27.    In its advertising to prospective students, Tufts stresses the collaborate, personal relationships as being central to the Tufts experience. "A university is more than just a collection of buildings where you attend your classes . . . Life at Tufts is shaped not only by the campus you live on, but by the people who live here with you."[15]

---

[11]    Tufts, Undergraduate Admissions, Sports and Recreational Facilities, *available at* https://admissions.tufts.edu/discover-tufts/life-at-tufts/athletics-and-fitness/sports-and-recreation-facilities/ (last viewed Dec. 31, 2020).
[12]    Tufts, Undergraduate Admissions, Interdisciplinary Spaces, *available at* https://admissions.tufts.edu/discover-tufts/academics/interdisciplinary-learning/interdisciplinary-spaces/ (last viewed Dec. 31, 2020).
[13]    Tufts, Undergraduate Admissions, Study Elsewhere, *available at* https://admissions.tufts.edu/discover-tufts/academics/study-abroad/ (last viewed Dec. 31, 2020).
[14]    Mission, Vision & Themes, *available at* https://www.tufts.edu/about/mission-vision (last viewed Dec. 31, 2020).
[15]    Tufts, Undergraduate Admissions, Life at Tufts, *available at* https://admissions.tufts.edu/discover-tufts/life-at-tufts/ (last viewed Dec. 31, 2020).



28.     As Tufts explains, "The collective energy of the Tufts community stems from the mix of people on campus. Jumbos come from a range of backgrounds and bring diverse talents, interests, and perspectives to the table.  . . . At Tufts, we also recognize how important it is for students to be able to connect with peers who share their experiences and identities through affinity organizations and gathering spaces."[16]

29.     "Our residential model . . . aids in the formation of community and connection due to shared needs and experiences inherent in each class year."[17]

---

[16]      Tufts, Undergraduate Admissions, Diversity, *available at* https://admissions.tufts.edu/discover-tufts/life-at-tufts/diversity/ (last viewed Dec. 31, 2020).
[17]      Tufts, Student Life, Residence Halls, *available at* https://students.tufts.edu/student-affairs/residential-life/campus-housing/residence-halls (last viewed Dec. 31, 2020).

30. Plaintiff accepted Tufts's offer and paid tuition and fees to Tufts in exchange for, and had the reasonable expectation of receiving, among other things: in-person coursework; face-to-face interaction and collaborating with professors, advisors, and peers; access to facilities such as libraries, laboratories, computer labs, and study rooms; student governance and student unions; extra-curricular activities, groups, intramural sports, and related activities; student art, culture, church access, and other activities; social development, fraternal organizations, and independence; hands-on learning and experimentation; and networking and mentorship opportunities.

31. Plaintiff substantially performed his contractual obligations. Tufts did not.

**B.     Closure of Campus and Suspension of In-Person Education**

32. On March 10, 2020, while students were on spring recess, Tufts announced it was canceling classes March 13, 23, and 24, and thereafter moving all or substantially all classes online for the remainder of the Spring 2020 semester. Tufts subsequently effectively closed the campus to students for the remainder of the semester.

33. Though all in-person instruction effectively ended on March 10, 2020, some classes were taught in an online format beginning March 25. Even students with concentrations in areas where in-person instruction is especially crucial (such as music, theatre, and the sciences), Tufts provided either no instruction or only remote, online instruction.

34. It was not until June 23, 2020 that Tufts announced that some of its Fall 2020 classes would taught online.[18] Even then, Tufts's announcement did not adequately apprise students which courses would be held exclusively online, and how the Tufts experience would differ from what was promised.

_____

[18]     Office of the President, June 23, 2020 Update on Tufts's Fall Plans, *available at* https://president.tufts.edu/news/2020/06/23/update-on-tufts-fall-plans/ (last viewed Dec. 31, 2020).

35.     Tufts's summer announcement of Fall 2020 online classes did not give students the time needed to make alternative arrangements (such as applying to another program).

36.     As a result of the closure of Tufts's campuses and facilities, Tufts has failed to deliver the educational services, facilities, access and/or opportunities for which Plaintiff and the putative Class contracted and paid, either directly or through a third-party on their behalf.

37.     Though Plaintiff and members of the Class paid Tufts tuition in exchange for a full semester of in-person education, Tufts ceased to provide the in-person education it promised, and thus has failed to uphold its side of the agreement. Nonetheless, Tufts insists that students uphold their side of the agreement, and refuses to refund tuition and related expenses.

38.     In so doing, Tufts is attempting to replace the irreplaceable – on-campus life at an elite university – with "virtual learning" via online classes, and is attempting to pass off this substitute educational experience as the same as or just as good as full participation in the university's academic life.

39.     Plaintiff and members of the Class paid Tufts tuition in reliance on its promise of teaching the courses for which he registered in the promised "In Person" course format and with in-person facility access. Plaintiff did not choose to attend and/or pay tuition for online courses.

**B.      Inferiority of Online Educational Experience**

40.     At least one academic study found that "[o]nline courses do less to promote academic success than do in person courses." The study found that:

      a)     Taking a course online reduced student achievement in that course by .44 points on the traditional four-point grading scale, a full one-third of a standard deviation;

      b)     Specifically, students taking the in-person course earned roughly a B- (2.8

GPA) versus a C (2.4 GPA) for students taking an online version of the same course;

c)   Taking a course online also reduces future grades by 0.42 points for courses taken in the same subject area in the following semester;

d)   Taking an online course reduced the probability of the student remaining enrolled in the university a year later by over ten percentage points.

Eric P. Bettinger *et al., Virtual Classrooms: How Online College Courses Affect Student Success*, AMERICAN ECONOMIC REVIEW, Vol. 107, No. 9, p. 2857.

41.    Tufts's move to online-only classes deprived students of the opportunity to benefit from a wide variety of academic and student events, on-campus entertainment, facilities, and athletic programs, which provided considerable value to Plaintiff and the Class members.

42.    The significance of in-person learning and interaction with faculty as the lifeblood of the campus and university experience is evident in the emphasis it is given in the Tufts course catalog and degree requirements.

43.    Tufts further emphasizes the importance of in-person education through other school policies. For example, Tufts permits students to transfer credits from other institutions, so long as the courses were not for online courses.[19] And prior to COVID-19, Tufts severely restricted the number of courses its students may take in an online format.[20]

44.    The online learning options Tufts provided following its March 2020 COVID-19

---

[19]    "Tufts does not accept transfer credits for internships nor for online courses." Tufts 2020-2021 Bulletin, *available at* https://students.tufts.edu/registrar/bulletin/2020-2021-academic-policies-and-procedures/general-undergraduate-information (last viewed Oct. 22, 2020).

[20]    Tufts Academic Credit Policies Before and After 2018, *available at* https://students.tufts.edu/sites/default/files/UpdatesAAAcreditpolicycomparisonGRID.pdf (last viewed Oct. 22, 2020).

announcement, though consistent with safety measures, cannot provide the academic and collegiate experience Tufts itself extolls as its signatures.

45.     In-person education is more valuable and desirable than online education.

46.     Before COVID-19, Tufts offered a handful of online degrees, and charged the same in tuition as its in-person degree.  However, enrollment numbers demonstrate how few students agreed that online programs were worth as much as in-person programs. For the 2018-2019 academic year, for example, Tufts reported to the National Center for Education Statistics that 11,263 students took no online classes, only 184 students took all online classes, and only 139 took some online classes.

**D.     Damages**

47.     Through this lawsuit Plaintiff seeks, for himself and Class members, Tufts's disgorgement of the pro-rated portion of tuition and fees, proportionate to the amount of time that remained in the Spring 2020 semester when classes moved online and campus services ceased being provided, accounting for the diminished value of online learning, as well as for each subsequent semester, continuing until Tufts resumes in-person classes. Plaintiff seeks return of these amounts on behalf of himself and the Class as defined below.

48.     Plaintiff also seeks damages relating to Tufts's passing off an online, "virtual" college experience as similar in kind to full immersion in the academic life of a college campus.

## V.     CLASS ACTION ALLEGATIONS

49.     Plaintiff seeks to represent a Class defined as:

> Any person who paid or caused to be paid tuition and/or fees to attend Tufts University when classes and/or coursework were limited in whole or in part to online attendance as a result of or in connection with COVID-19 (the "Class").

Specifically excluded from the Class are Tufts, its officers, directors, trustees and agents, the judge assigned to this action, and any member of the judge's immediate family.

50.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

51.     **Numerosity.** The members of the Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class. Although the precise number of Class members is unknown to Plaintiff at this time, the true number of Class members is known by Tufts and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Tufts and third-party retailers and vendors.

52.     **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

a)      whether Tufts accepted money from Class members in exchange for the promise to provide services;

b)      whether Tufts provided the services for which Class members contracted;

c)      whether Class members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Tufts did not provide;

d)      whether Tufts is liable to Plaintiff and the Class for unjust enrichment.

53.     **Typicality.** Plaintiff's claims are typical of the claims of the other members of the

Class in that, among other things, all Class members were similarly situated and were comparably injured through Tufts's wrongful conduct as set forth herein. Further, there are no defenses available to Tufts that are unique to Plaintiff.

54.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel that is highly experienced in complex class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

55.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Tufts. It would, thus, be virtually impossible for the Class on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

56.     In the alternative, the Class may also be certified because:

a)      the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of

conduct for the Tufts; and/or

b)      the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c)      Tufts has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

### COUNT I
### Breach of Contract

**57.**     Plaintiff restates, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

**58.**     Plaintiff brings this claim individually and on behalf of the members of the Class against Tufts.

**59.**     Through its student and faculty policies, course catalog, course schedule, admission agreement and payment of tuition and fees, and other items alleged above, Plaintiff and each member of the Class entered into a binding contract with Tufts.

**60.**     As part of the contract, and in exchange for the aforementioned consideration, Tufts promised to provide in-person education services, including in-person instruction and access to on-campus resources, for the full duration of the Spring 2020 semester, and continuing into the 2020-2021 academic year.

**61.**     Plaintiff and Class members fulfilled their end of the bargain when they paid (or caused to be paid) monies due for tuition, fees and related expenses.

62.     Tufts has failed to provide the contracted-for services and has otherwise not performed under the contract as set forth above. Tufts has retained monies paid by Plaintiff and the Class and refuses to issue tuition adjustments or any other type of refund or reimbursement.

63.     Plaintiff and members of the Class have suffered damage as a direct and proximate result of Tufts's breach, including but not limited to deprivation of the education, experience, and services that they were promised and for which they have already paid.

64.     As a direct and proximate result of Tufts's breach, Plaintiff and the Class are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Tufts for services that Tufts has failed to deliver.

### COUNT II
### Unjust Enrichment

65.     Plaintiff restates, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein.

66.     Plaintiff brings this claim individually and on behalf of the members of the Class against Tufts, and in the alternative to Count I.

67.     Plaintiff and members of the Class conferred a benefit on Tufts in the form of monies paid for tuition, fees and related expenses in exchange for certain service and promises. This tuition was intended to cover in-person educational services for the academic semester.

68.     Tufts benefited, voluntarily accepting and retaining the monies Plaintiff and members of the Class paid.

69.     Plaintiff and members of the Class did not pay for course credits. Plaintiff and members of the Class paid for the services Tufts promised, which they did not receive.

70.     Tufts unfairly and inequitably retained the tuition and fees paid by Plaintiff and

the members of the Class, and failed to provide the services for which the tuition and fees were collected.

71.     The online education services Tufts substituted for the in-person education for which Plaintiff and Class members paid has a substantially lesser value, but Tufts has nonetheless retained full payment.

72.     It would be unjust and inequitable for Tufts to retain benefits in excess of the services it provided, and Tufts should be required to disgorge any tuition, fees and related expenses that exceed the value of online education.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Tufts as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.     For damages in amounts to be determined by the Court and/or jury;

D.     For prejudgment interest on all amounts awarded;

E.     For an order of restitution and all other forms of equitable monetary relief, including disgorgement;

F.     For injunctive and declaratory relief as pleaded or as the Court may deem proper;

G.     For an order awarding Plaintiff and the Class reasonable attorneys' fees and expenses and costs of suit; and

    H.      All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

**JURY DEMAND**

    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: January 3, 2021                Respectfully submitted,

                              SCOTT SCHMIDHAUSER, *on behalf of himself and all others similarly situated.*

                By:    */s/Yvette Golan*
                              Yvette Golan (admitted pro hac vice)
                              **THE GOLAN FIRM PLLC**
                              2000 M Street, NW, Suite #750-A
                              Washington, D.C. 20036
                              T: (866) 298-4150
                              F: (928) 441-8250
                              ygolan@tgfirm.com

                              James A. Francis*
                              John Soumilas*
                              David A. Searles*
                              Edward H. Skipton*
                              **FRANCIS MAILMAN SOUMILAS, P.C.**
                              1600 Market Street, Suite 2510
                              Philadelphia, PA 19103
                              T: (215) 735-8600
                              F: (215) 940-8000
                              jfrancis@consumerlawfirm.com
                              jsoumilas@consumerlawfirm.com
                              dsearles@consumerlawfirm.com
                              eskipton@consumerlawfirm.com

                              *\*Pro hac vice to be filed*

                              *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed today through the Court's ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent by U.S. Mail to those indicated as non-registered participants on January 3, 2021.

*/s/Yvette Golan*
Yvette Golan